UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GRUBB & ELLIS/CENTENNIAL, INC., )
et al.,                        )
                               )
        Plaintiffs,            )
                               )
        v.                     )   NO.  3:03-0016
                               )   Judge Campbell/Brown
GAEDEKE HOLDINGS, LTD., et al., )
                               )
        Defendants.            )

**TO:  The Honorable Todd J. Campbell**

<u>**REPORT AND RECOMMENDATION**</u>

**I.  INTRODUCTION**

        The District Judge has referred this matter to the
Magistrate Judge for a Report and Recommendation on the amount of
commissions due plaintiffs, to include the issue of whether
plaintiffs' claim for a commission involving Bridgestone's possible
execution of the lease in 2009 of different parts of the
defendants' property is within the contemplation of the agreement,
or is otherwise ripe for decision at this time, and the amount of
attorneys' fees and litigation expenses due the plaintiffs (Docket
Entry No. 86).

        For the reasons stated below, the Magistrate Judge
**recommends** that the plaintiffs be awarded a commission in the
amount of $270,254.46, prejudgment interest in the amount of
$49,634.21, attorneys' fees in the amount of $103,309.50, expenses
in the amount of $5,944.06, and that the matter of future

commissions be determined not to be ripe at this time, and that this case be **closed.**

**II.   BACKGROUND**

The plaintiffs, Grubb and Ellis/Centennial, Inc. ("Grubb") originally filed a complaint against Gaedeke Holdings, Ltd., and Gaedeke Landers, LLC. ("Gaedeke") in Davidson County Chancery Court on December 10, 2002.  The defendant Gaedeke promptly removed the matter to federal court on January 7, 2003 (Docket Entry No. 1).  In addition, on January 24, 2003, Gaedeke filed an answer and a counterclaim against Grubb (Docket Entry No. 4).  The parties' theories of the case were set forth in the original case management order (Docket Entry No. 6) on March 3, 2003.  The plaintiffs' theory essentially was that the plaintiff was a licensed Tennessee real estate broker and that pursuant to a leasing agreement between the plaintiffs and the defendants, the plaintiffs were the leasing agent for office buildings owned by the defendants in the Highland Ridge Office Park.  They allege that after entering into this brokerage agreement, they were terminated in January 2002.  Under the agreement, they were, however, entitled to broker's commission, if within 90 days after termination the property was leased to someone that the broker had negotiated with either directly or indirectly.

2

One of those projects was Bridgestone/Firestone. They allege that their share of the commission for this lease should have been $270,254.46, which the defendants refused to pay.

The defendants' theory of the case was that they did not owe this commission, since the plaintiffs had failed to use their best efforts to lease space in the building. They allege that the plaintiffs terminated the only licensed broker reasonably acceptable to the defendants to carry out the brokerage agreement and did not replace this broker with an acceptable person. This lead them to believe that the plaintiffs had defaulted under the agreement, and thus, precluded any payment of a commission.

In addition, because they believed the plaintiffs had failed to carry out its portion of the bargain, they insisted they were entitled to reasonable attorneys' fees and costs upon becoming a prevailing party.

Subsequently, the parties filed cross motions for summary judgment. The plaintiffs' being Docket Entry No. 12, filed May 20, 2003, and the defendants' being Docket Entry No. 22, filed July 2, 2003. The parties also entered into a stipulation of facts for the Court to consider in determining their cross motions for summary judgment (Docket Entry No. 33).

The District Judge subsequently granted the defendants' motion for summary judgment and denied the plaintiffs' motion for summary judgment on October 16, 2003 (Docket Entry No. 35). The

3

District Judge entered a memorandum on the matter (Docket Entry No. 34). In this memorandum, the District Judge carefully summarized the various contentions of the parties and the various agreements leading up to their dispute. The District Judge held that a broker is not entitled to a commission, where there is a good faith break or hiatus in negotiation and a subsequent renewal of negotiations without the broker's participation (Docket Entry No. 34, p. 14). At this point in the proceedings, the defendants were the prevailing parties. The defendants filed a motion for attorneys' fees (Docket Entry No. 37) and the plaintiffs filed a response to the petition (Docket Entry No. 47). The plaintiffs also appealed the decision of the District Judge to the Sixth Circuit (Docket Entry No. 53).

Magistrate Judge Griffin issued a Report and Recommendation recommending the defendants be allowed attorneys' fees and litigation expenses in the amount of $22,281.92. After various objections, that report was not adopted, subject to being renewed at the conclusion of the appeal to the Sixth Circuit (Docket Entry No. 63).

Subsequently, the Sixth Circuit reversed the granting of summary judgment and remanded the case for further proceedings (Docket Entry No. 66). Thereafter, the parties were allowed to file additional motions (Docket Entry Nos. 71 and 74). The District Judge, on July 22, 2005, granted the plaintiffs' renewed motion for

4

summary judgment in part and denied the defendants' renewed motion for summary judgment in its entirety.

In the memorandum accompanying the order (Docket Entry No. 79), the District Judge, in accordance with the holding of the Sixth Circuit, after again summarizing the factual and procedural background (Docket Entry No. 79, pp. 2-8), held that under ¶ 8.4 of the agreement, the plaintiffs were entitled to a commission, even if that brokerage agreement had been terminated and they had provided no additional services. The Court rejected the defendants' contention that a commission under this paragraph was contingent upon the plaintiffs having satisfied other portions of the agreement requiring them to perform various duties. The Court concluded that payment of a commission under ¶ 8.4 was not contingent upon plaintiffs fulfilling other provisions of the agreement (Docket Entry No. 79, pp. 11-12).

The District Judge then directed the parties to brief the issue of commissions and the amount of attorneys' fees and prejudgment interest that might be due in this case. The parties were also directed to address the issue of whether plaintiffs' claim for a commission involving Bridgestone's possible execution of a lease in 2009 for other parts of the defendants' properties was within the contemplation of the agreement or otherwise ripe for a decision by the Court.

Pursuant to the District Judge's directions, the parties have now fully briefed this issue (Docket Entry Nos. 86, 87, 88, 89, 90, 93, 94, 95, 96, 97, 99, 100, 103, 104, 105, and 106). As may be seen from the number of pleadings related to the issue of attorneys' fees, the parties have addressed a considerable amount of time and effort to this case.

The plaintiffs claim a commission due and owing of $270,254.46, which is the amount the defendants paid themselves when they initially determined that they would not pay the plaintiffs in this matter (Docket Entry No. 87, p. 2). The defendants did not contest this amount, if the plaintiffs are due a commission.

Next, the plaintiffs claim attorneys' fees and expenses in the amount of $130,778.06, as the prevailing party. This is supported by a breakdown of the fees and expenses in Docket Entry No. 90-2. The defendants contest that the plaintiffs are entitled to attorneys' fees and expenses under the contract (Docket Entry No. 85, p. 24). The plaintiffs contend that Gaedeke justifiably terminated the agreement and, therefore, there is no basis for attorneys' fees under the agreement. They further contend that the fees, if allowed, should be limited to a more reasonable amount of time and hourly rate, and should be limited to the period of time after the Sixth Circuit decision in the case. They contend the law

6

was unsettled until the Sixth Circuit ruled (Docket Entry No. 85, p. 25).

Next, the plaintiffs request prejudgment interest in an amount to be set by the Court. They suggest that the proper amount is $61,441.41 (Docket Entry No. 87, p. 7). Alternatively, they suggest that the Court could start the judgment date at a date when the commission was first due, in which case calculated at the maximum rate, the interest due would be $66,348.57 (Docket Entry No. 87, pp.7-12). The defendants contend that no prejudgment interest should be allowed (Docket Entry No. 85, pp. 25-27). They contend that the law was uncertain until the Sixth Circuit ruled and that equity should not favor the plaintiffs, inasmuch as they did not fully perform under their agreement.

Finally, the plaintiffs claim that they will be entitled under the contract to commission, in the event that Bridgestone exercises an option to extend its lease in 2009 (Docket Entry No. 87, pp. 12-15). They argue that they are entitled to additional commission under the contract and that issue should be determined in their favor. However, they agree that the amount of any such additional commission will not accrue until Bridgestone either renews or extends its present lease. Both parties agree that, at the present time, Bridgestone has given no indication that it will or will not modify the space it presently leases. The plaintiffs contend that the Court should defer any ruling on this issue until

7

such time as a modification of the lease occurs that would justify a commission and that, if such an event occurs, the defendants should be required to notify the plaintiffs so that the plaintiffs can then determine whether to assert a commission claim under the listing (Docket Entry No. 87, pp. 12-13).

The defendants argue that under no circumstances are the plaintiffs entitled to additional commissions, since any renewals will take place outside the terms of the existing contract.

The parties' positions are vigorously supported by affidavits, briefs, citations to the record, and case law.[1]

## III. LEGAL DISCUSSION

With this background, the Magistrate Judge will now turn to a legal discussion of these four issues.

### Commission Due

As an initial matter, the parties agree that the amount of commission involved at this point is $270,254.46. This is the amount the defendants originally calculated as being the commission which they paid to themselves. The only dispute concerning the commission is whether the plaintiffs are entitled to such a commission under the contract. The defendants have presented the argument that the plaintiffs did not prevail under

---

[1]The Magistrate Judge would like to commend the attorneys on both sides for the way they have briefed and argued this matter. While clearly the parties have sharp disagreement over the legal issues presented, both sides have fully stipulated to facts not in dispute and have conducted their briefing and argument in a highly professional manner.

the contract and would be entitled to only such amount justified in quantum meruit (Docket Entry No. 85, p. 15).

With all due respect, the District Judge's ruling in this matter forecloses that argument. The District Judge, in his memorandum (Docket Entry No. 79, p. 11), states

> In giving effect to the common and ordinary meaning of the language in the Agreement at issue here, the Court concludes that the payment of the commission under Paragraph 8.4 is not contingent on Plaintiff's fulfillment of other provisions in the Agreement.

The District Judge has also declined to modify or amend his original holding in this matter (Docket Entry No. 91). Accordingly, the Magistrate Judge **recommends** that the commission fee in this matter be set at $270,254.46.

The next issue the Magistrate Judge will address is that of prejudgment interest.

### Prejudgment Interest

The plaintiffs seek the amount of $61,441.41 in prejudgment interest (Docket Entry No. 87, p. 7). They point to T.C.A. § 47-14-109(b), which provides that liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless otherwise expressed.

In this case, they point out that, as set forth in Docket Entry No. 33, Exhibit 39, the amount owed in commission can be made certain by mere computations. The plaintiffs are correct in this argument, inasmuch as the amount due on the initial commission is not truly in dispute.

9

The plaintiffs further contend that if prejudgment interest is not awarded under T.C.A. § 47-14-109(b), they are entitled to prejudgment interest pursuant to T.C.A. § 47-14-123, which provides that interest may be awarded in accordance with the principals of equity at a rate not to exceed a maximum effective rate of 10% per annum. In this connection, they cite Performance Systems, Inc. v. First American National Bank, 554 S.W.2d 616, 619 (Tenn. 1977), for the proposition that

> Although the defendant-assignee may have had grounds for believing that it had a legal defense to the claim for rent, it is hard to avoid the conclusion that it was trying to use the plaintiff's property without paying for it.

They argue that the defendants paid the commission to themselves and it has now been determined that the commission was due to the plaintiffs, and therefore, equity requires that they be compensated for their loss of the use of this money during the time the defendants retained the commission for their own use. The plaintiffs have provided the affidavit of a CPA, Mr. John Crow, to calculate prejudgment interest on the commission of $270,254.46 (Docket Entry No. 89).

The defendants point to the case of Myint v. Allstate Insurance Co., 970 S.W.2d 920 (Tenn. 1998), for the proposition that the trial court has considerable discretion in determining whether to award prejudgment interest or not. They argue that, inasmuch as the plaintiffs did not fulfill all of their obligations

10

under the agreement, it is unfair for the plaintiffs to receive prejudgment interest in this matter. They again argue that quantum meruit is the only possible means for the plaintiffs to recover.

The defendants argue that this was a close case shown by the fact that they initially prevailed at summary judgment. Thus, they contend that the plaintiffs' entitlement to compensatory damages was not clear and that in cases where compensatory damages are not clear, the court should decline to award prejudgment interest. They also re-argue their point that the plaintiffs did not fulfil all of their obligations under their agreement, and therefore, should not be able to recover under the agreement.

The Magistrate Judge believes that the plaintiffs have the better portion of this argument. As pointed out in the Myint case, prejudgment interest can be awarded against a defendant, even if the defendant's original denial of the claim is reasonable. Myint at 928.

Likewise, the case of Rybarczyk v. TRW, Inc., 235 F.3d 975 (6th Cir. 2000), allows, among other rates, the interest rate actually earned by defendants on the funds wrongfully withheld.

At oral argument in this matter, the parties were requested by the Magistrate Judge to provide the prime rate for the period of time involved, and the parties indicated that they did not have that particular rate but did indicate that it would be less than the rate initially suggested by Mr. Crow in his calculations (Docket Entry No. 89).

11

After considering all of the briefs and arguments of counsel, the Magistrate Judge believes that the case law clearly supports a discretionary award of prejudgment interest in this matter. The defendants paid a commission to themselves and thus had the benefit of those funds for the entire time leading up to the final decision of the District Judge in this matter. The cases support a finding that those funds should have been available to the plaintiffs and that they were deprived of the use of that money.

There are a number of rates that can be used in this matter. The Magistrate Judge has taken into account the fact that the defendants did have a reasonable basis for their claim, and in fact, initially prevailed in this matter. Thus, the Magistrate Judge believes that the appropriate rate to use is a rate that would approximate the interest the plaintiffs would have received had they been paid, as finally determined by the Court. Although a specific rate was not given by the parties, the Magistrate Judge believes that a rate of 7% is equitable in this matter. The Magistrate Judge has applied a 7% rate on the $135,077.23 from October 14, 2002 until March 19, 2003. That interest amounts to $4,041.21. The Magistrate Judge has then applied the 7% rate to the $270,154.46 from March 19, 2003 until August 15, the date of the entry of judgment for the plaintiffs in this matter. That amount at 7% simple interest is $45,593.00, for a total interest award of $49,634.21.

12

## Attorneys' Fees and Costs

The next issue to be addressed is that of attorneys' fees. The plaintiffs have submitted a claim for attorneys' fees in this matter of $124,834.00 and costs of $5,944.06, for a total claim of $130,778.06 (Docket Entry No. 90, Exhibit 1). The plaintiffs point out in their opening brief (Docket Entry No. 87, p. 4) that they are the prevailing party and that ¶ 15.4 of the contract provides that if a dispute arises between owner and broker, under the terms of this agreement, and such dispute results in judicial action, the prevailing party shall be entitled to recover, as part of such action, its reasonable attorneys' fees and court costs.

The defendants make an initial argument that ¶ 15.4 of the agreement does not govern this matter, since it provides for attorneys' fees and costs only if a dispute arises between the owner and broker, under the terms of this agreement. They argue that since the plaintiffs did not fulfill its side of the bargain, the defendant justifiably terminated the agreement thereby rendering it unenforceable, and that the plaintiff therefore is not able to recover under the terms of the agreement (Docket Entry No. 85, p. 24-25).

With all due respect, this argument lacks merit. As an initial matter, the Magistrate Judge would note that when the shoe was on the other foot, and the defendants believed they were the prevailing party, they had no difficulty in seeking attorneys' fees

13

at that time (see Docket Entry No. 37). The litigation in this case clearly arises because of the leasing agreement in this matter and has required the Court to interpret its meaning. Thus, the Magistrate Judge believes that the law is clear that under the contract the prevailing party is entitled to its reasonable attorneys' fees and costs.

The defendants further object to any attorneys' fees to be awarded for work prior to the decision of the Sixth Circuit. Again, the Magistrate Judge believes that this argument lacks merit. While certainly there was a disagreement as to the meaning of the agreement, the fact remains that a dispute arose under it and the agreement provides for attorneys' fees to the prevailing party.

The final issue is as to the reasonableness of the attorneys' fees and costs in this matter. Plaintiffs' counsel has submitted an affidavit with an attached explanation of his fees and costs (Docket Entry No. 90). The defendants have objected to the hourly rate, pointing out that their hourly rate is considerably less than that of the plaintiffs, and that they spent far less time litigating the matter. Thus, they contend, in short, that a reduction in both the hourly rate and amount spent is appropriate (Docket Entry No. 95). The argument over attorneys' fees produced a number of affidavits by the law firms involved (see Docket Entry Nos. 90, 95, 104, 105, 106, among others). In addition, plaintiffs have used a survey by Altman Weil, Inc. to support the

14

reasonableness of their fees (Docket Entry No. 103, Exhibit 1).

The defendants have objected to any use of this survey as hearsay (Docket Entry No. 106). The Magistrate Judge believes that the survey can be considered by the Magistrate Judge, inasmuch as it is a document relied upon by the plaintiffs' counsel in fixing their fees.

In this case, we essentially have competing affidavits of the firms. Neither side has provided an opinion by an outside, disinterested attorney as to the reasonableness of either the hourly rate or the amount of time claimed by the plaintiffs. Such an outside affidavit would have been given more weight than the inherently self-serving declaration of the attorneys in question.

Disputes over attorneys' fees are among the most difficult matters courts have to resolve. Accordingly, judges have been given wide discretion in determining the reasonableness of attorneys' fees. See Auto Alliance International, Inc. v. United States Customs Service, 2005 WL 3149673 (6th Cir. Nov. 23, 2005); Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Coulter v. Tennessee, 805 F.2d 146 (6th Cir. 1986).

In this case, Mr. Panther in his affidavit (Docket Entry No. 95) points out that plaintiffs' counsel claimed a total of 460 billing hours in this matter, while he spent only 255 billing hours on the same matter. While he agrees that plaintiffs' counsel was required to expend additional time in preparing the stipulation and joint appendix, this would only add an additional 41 hours. He

15

contends that other than this 41 hours, both sides were addressing the same law, briefing the same issues, and writing and reviewing the same pleadings. He contends that the amount of time spent by plaintiffs' counsel is, therefore, excessive. He further contends that the hourly rate charged by plaintiffs' counsel is high. In his view, a billing rate for plaintiffs' lead counsel of $315 is unreasonably high, as is the billing rate for other plaintiffs' attorneys in the matter. He points out that attorneys with similar experience to plaintiffs' lead counsel are billing at rates between $225 and $250 an hour. He points out that his own rate in this matter varied between $150 and $175 per hour.

The plaintiffs have responded with an affidavit of their own, contending that their rates are not too high. It is simply that the defendants' counsel's rates are too low. Given these competing affidavits, the Court is left with attempting to sort out what is a reasonable rate and a reasonable amount of time in this case.[2] The survey cited by plaintiffs' counsel is not of great help because it does not show what firms were involved and what types of cases were specifically involved. The survey only gives general information and certainly gives no information about the

_____

[2]The Magistrate Judge has applied the well-known lodestar test in order to determine a reasonable fee in this case. Plaintiffs' counsel obtained an excellent result for his client and is, therefore, entitled to a fee equal to a reasonable hourly rate multiplied by the amount of time reasonably spent in the case. The Magistrate Judge does not believe that there is any basis for adjusting that determination either up or down. This was straightforward commercial litigation.

16

amount of time that is reasonably spent on a case.  The Magistrate
Judge, from reviewing other fee dispute  matters and from
participation in a number of settlement conferences, has a general
idea of fees charged by attorneys in the Nashville area.

Plaintiffs' lead counsel is an experienced attorney, who
in fact has obtained an excellent result for his client.
Accordingly, the Magistrate Judge does not question the necessity
of awarding attorneys' fees in this matter.  They are provided for
in the contract.  The only issue remaining is what is a reasonable
fee and a reasonable amount of time.  In considering the amount of
time spent in this matter, the Magistrate Judge has carefully
reviewed the request for fees and expenses (Docket Entry No. 90,
Exhibit 1).  As an initial matter, the breakdown is not as complete
as the Magistrate Judge would like.  A number of substantial blocks
of time include a number of different things.  For instance, an
entry on 8-20-2002 shows telephone conferences, outline of issues
to be discussed, and an actual meeting, which consumed 4½ hours.
From breakdowns such as this, it is difficult for the Magistrate
Judge to understand how much was involved in actually meeting with
clients and witnesses and what was simply spent on a telephone
conversation.

It has been the Magistrate Judge's experience, as a trial
attorney for a number of years, that the attorney who is on the
offense in a particular case will normally be required to expend
more time than an attorney in a defensive posture.   In this case,

plaintiffs' counsel had to initially research and file their case, while defendants' counsel simply had to respond to those allegations. Plaintiffs' counsel lost the initial round of the case and was therefore responsible for again being on the offensive in litigating the matter in the Sixth Circuit. This, in the Magistrate Judge's experience, would require more time than would be expended by the defending counsel. Nevertheless, there does appear to be a substantial difference in the amount of time spent by the two counsel, even allowing for the admitted additional requirement of some 41 hours for preparation of the stipulations and joint appendix. Accordingly, the Magistrate Judge believes that the amount of billing hours in this matter should be reduced from 460.35 hours to 375 hours.

The billing rate for Mr. Neenan shows that he began work on this case with a billing rate of $250 an hour, which increased to his current billing rate of $315 per hour. Given the rates charged by other attorneys in this matter, the Magistrate Judge believes that it is more appropriate to use an average rate for the period of time involved and that a reasonable rate for plaintiffs' lead counsel would be $270.00 per hour.

The rate for the other two partners in the matter should be $200 per hour for the limited amount of work they did. The work for the associate involved appears appropriate, as well as the rate for the paralegals and the law clerk.

18

At oral argument, counsel for the plaintiffs advised that he had attempted to use a law clerk wherever possible for electronic research. He pointed out that, because of the unusual nature of some of the pleadings in this matter, such as a truly unpublished opinion, electronic research was particularly critical and a law clerk was better at performing electronic research than he was. The use of a law clerk, of course, would reduce the fee charged in this matter.

Accordingly, the Magistrate Judge **recommends** that 2 hours be allowed at a rate of $200 for the two other partners in this matter for a total of $400 and an allowance of 1 hour for an associate at $140 an hour, for a total of $140.

The rate for the paralegal for 3½ hours at $75 and $85 per hour should be $289.50. The 25 hours for the law clerk at $80 per hour should be $2,040. Plaintiffs' lead counsel should be allowed 372 hours at $270 per hour for a total of $100,440.00, making a grand total for fees of $103,309.50.

The Magistrate Judge has also reviewed the cost disbursement and finds that there were no specific objections filed to the cost summary. The Magistrate Judge would note that there is no explanation for the $1,429.29 claim for professional services. Without some explanation of what professional services were, the Magistrate Judge would normally disallow this amount. However, it is likely the expense was for the CPA report. In the absence of any objection, expenses will be allowed in the amount of $5,944.06.

## Future Commission

The final issue to be determined is the issue of future commissions.  Is the plaintiffs' claim for a commission involving Bridgestone's possible execution of renewal or new leases within the contemplation of the leasing brokerage agreement between the parties and otherwise ripe for a decision by the Court at this time?

During oral argument, the parties agreed that this was the question presented. The parties have different views as to its outcome.  The plaintiffs believe that the Court should make a determination that plaintiffs are entitled to additional commission under Section 8 of the agreement, if in fact Bridgestone renews or expands its current lease.  They agree that the amount, if any, of such additional commission will not accrue until Bridgestone either renews or extends the terms of its lease or expands the amount of property it leases.  Accordingly, they believe that the Court should instruct the defendants to promptly notify the plaintiffs if any of the circumstances triggering an additional commission occur so that the plaintiffs may then determine whether to assert a commission claim.

From a review of the documents in the case, as summarized by the plaintiffs' (Docket Entry No. 87, pages 12-15), and defendants' memorandum (Docket Entry No. 85, pages 23-25), it appears that Bridgestone is not required to exercise its rights to extend the lease until December 31, 2008.  It also appears that

Bridgestone may have a right of first refusal, if additional space becomes available. All parties have agreed that at the present time there has been no change in the original lease.

The defendants say that the Court should firmly rule that there is no entitlement to additional commissions, should Bridgestone exercise any of its options, and the Court should so hold at the present time. Alternatively, they agree with the plaintiffs that the matter is not ripe for determination at this time, and therefore, it would be inappropriate for the Court to determine at the present time that they are required to pay, should Bridgestone exercise any of its rights.

Clearly the matter is not ripe for determination at the present time. Bridgestone has not exercised any of its options and it is not clear that they will exercise such options. It appears that it will likely be December 31, 2008, before they are required to exercise the main part of their options.

While the parties have extensively briefed the issue of whether there is a right to a commission on any future renewals or expansions, the Magistrate Judge believes that the matter cannot be determined at the present time. There are a number of issues raised concerning the overall contract and the alleged performance or non-performance by the parties that, in the Magistrate Judge's view, preclude a determination at the present time as to whether there is or is not an entitlement to any future commission. The defendants have pointed out that there are a number of contract

21

restrictions, including renewals within 10 years, and contentions by the plaintiffs as to whether the defendants have waived any limitations by renewing a contract with Mr. Cherry, which are countered by the defendants' contention that Mr. Cherry would be entitled to additional commissions only if he is a broker at the time of the renewal.

All of these are matters, in the Magistrate Judge's view, which would require additional proof, particularly since it is unsure whether there will be any exercise by Bridgestone of an option which could trigger a potential commission. The matter is simply not ripe.

If at some future date Bridgestone does exercise some rights under the lease, the matter could be litigated with a new lawsuit at that time. It simply does not seem practical to keep a case open for an additional three years or more, for an event that may never happen.

The Magistrate Judge would note that the defendants in this case have argued at various times that the plaintiffs have breached the agreement by failing to adequately perform. Those alleged breaches were deemed not to control the commissions due in this matter. Defendants are not foreclosed from a suit for breach of contract on these alleged deficiencies.

Given the litigation to date, and its high costs, the Magistrate Judge might suggest that the parties consider putting an end to all the litigation involving this contract. However, that

22

is a matter outside the Magistrate Judge's charge and his comments that the parties should perhaps finally walk away from this litigation are pure dicta.

## IV.  RECOMMENDATION

In conclusion, for the reasons stated above, the Magistrate Judge **recommends** that the plaintiffs be awarded a commission in the amount of $270,254.46, prejudgment interest in the amount of $49,634.21, attorneys' fees in the amount of $103,309.50, expenses in the amount of $5,944.06, and that the matter of future commissions be determined not to be ripe at this time, and that this case be **closed.**[3]

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court.  Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'q denied, 474 U.S. 1111 (1986).

---

[3]The Magistrate Judge would hope there would be no further fee applications, if this report and recommendation is accepted.

23

**ENTERED** this 22nd day of December, 2005.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge